## THOMAS H. TRAVERS
### v.
## PETER SNYDER.

*Negotiable Instruments—Note—Action on by Indorsee against Maker—Signature by Mark—Forgery—Comparison of Marks—Cross-examination—Jury—Duty of—Conspiracy—Evidence—Practice.*

1. In an action upon a promissory note by the indorsee against the maker where the defense was that the signature to the note, which was by a mark, was a forgery, it was error for the court to instruct the jury that in determining the genuineness of the mark by which the note was alleged to have been signed they might compare it with the defendant's signature, also by mark, to his plea in the suit.

2.  Such comparison would also have been improper had the signature been in writing, it being obnoxious to the principle that a party can not be permitted to manufacture evidence for himself.

3.  Where there is a conflict in the evidence it is for the jury to determine which side to believe, but the jury are not to willfully disregard any testimony; and an instruction that has a tendency to give the jury to understand that they may arbitrarily disregard the testimony of witnesses is improper.

4.  Cross-examination of witnesses for the purpose of showing their interest in the proceeds of the note sued on was proper.

5.  Evidence as to the habit of defendant as to the giving of notes was proper if confined to his general reputation in that regard.

6.  A conspiracy among several persons can not be proved by the declarations of either of the parties separately, but if the conspiracy be first shown, declarations of each of the conspirators in pursuance of the general purpose may be given in evidence against all.

[Opinion filed December 8, 1890.]

APPEAL from the Circuit Court of Peoria County; the Hon. T. M. SHAW, Judge, presiding.

Mr. ARTHUR KEITHLEY, for appellant.

Messrs. BARNES & BARNES, for appellee.

LACEY, J.  This was a suit on a promissory note, commenced by appellant against appellee, to recover the amount of the note and interest.  The note was for $1,000, purporting to be signed by appellee by his mark, and payable to one W. A. Morton and indorsed to appellant, and dated September 28, 1888.  The issues were, general issue, verified by appellee, and special plea of want of consideration, also verified, denying assignment of note in suit by payee.  There was a replication, denying notice of want of consideration for the execution of the note, and averring that the plaintiff bought the note before due for a valuable consideration.  That since the commencement of the suit appellant learned, and so alleges the fact to be, that the consideration to defendant for the execution of the said note to payee was the sale and conveyance by payee to defendant of a certain interest in a certain patent right of the value of $10,000.  To this replication there was a general rejoinder.

The case was tried by a jury and resulted in a verdict for appellee, and judgment thereon against the appellant for costs. The case is brought here and various errors are assigned, and also cross-errors by appellee.    We conceive the main issue in the case to be whether or not the appellee ever actually signed the note, or, in other words, whether the note was a forgery.  For, in view of the fact that appellant was an indorsee for value, and not shown to have had any notice of want of consideration before or at the time of purchase, the plea of want of consideration could not be available on the trial.   The appellee testified positively that he never signed the note in suit or the series of notes claimed to be $6,000, in separate notes of $1,000 each, given, as is claimed, in consideration of a deed from Morton to appellee for certain territory for a patent right for a "flat iron heater." Whether or not the note in question, as well as the other notes, are forgeries, was a question for the jury; but of one thing we feel well satisfied, and that is, if not a forgery, the basest fraud was attempted to be perpetrated on the appellee by Morton, assisted by others, who have since attempted to share the spoils with Morton.   We mean George Jones and Edwin B. Nelson, witnesses to the purported note.   The appellant's counsel says in his brief that Morton "no doubt was possessed of all the elements necessary to constitute a first-class vendor of patent rights," and the description would not be perfect without adding a stronger and more energetic expletive.   The point made by appellant that the verdict is not sustained by the evidence, in our judgment is not well taken.  If no other errors had been committed on the trial than the one above named, we would feel well satisfied with the judgment.   It is true that there is evidence direct and positive in its character that appellee placed his mark to the notes, fully understanding what he was doing.   The two attesting witnesses, Nelson and George Jones, testify that they saw appellee make his mark to the notes, and that he fully understood what he was doing.   This was somewhat corroborated by one of George Jones' boys and Jacob Jones.   The appellee is corroborated by many circumstances, and by the evidence of

Samuel Ramsey. It was a fair question for the jury whether or not the notes were signed by appellee. It was, therefore, important for the court to properly instruct the jury. The main complaint as to the instructions, and the one of most importance, is the giving of the appellee's eighth instruction, which is as follows: "On the question of whether the cross on the note in suit was made by Peter Snyder or not, you have a right to examine and compare it with the cross or mark of Peter Snyder to his plea in this case," and the refusing of the appellant's second offered instruction, which was the direct reverse. This brings up two questions, whether there can properly be any comparison between one cross mark, or mere mark, and another, and can an interested party to a suit be allowed to manufacture evidence for himself. We are of the opinion that both questions ought to be decided in the negative. How can simply a mark be recognized as that of any particular person, without any proof of any particular characteristic by which it can be distinguished? And it seems to us that it proves nothing that one cross or mark is like another. It seems to us that it would be very unsafe, and lead to dangerous results, to allow such comparisons to be made and taken as evidence, unless at least some proof were made that the defendant's mark had some established characteristics, like a handwriting, that would enable it to be recognized. A mere cross or mark can not be identified, and it therefore stands for itself alone. We refer to the authorities on this point, cited in appellant's brief, which seem to be in point, and no authority is cited to the contrary, nor have we been able to find any. Gillian, Adm'r, v. Perkinson, 4 Rand. (Va.) 328; George v. Baugh, 4 Rand. (Va.) 636; Engles v. Benington, 4 Yeates (Pa.), 346; Watts v. Kilbourn, 7 Ga. 358; Tageas Co. v. Mahnoris Huns, 9 Curry (5 La.), top paging 324; Jackson v. Van Dusen, 5 Johns. 154; Carrier v. Hampton, 11 (Irish) N. C. 311; State v. Byrd, 93 N. C. 626; 2 Benth. Jud. Ev. 461.

As to the next point, we are as well satisfied that even if it were the written signature of appellee that were offered for comparison, it could not be allowed in favor of the party signing the plea, and the instruction should have so stated.

It violates one of the fundamental rules of evidence in this case in a most glaring manner.   We refer to the rule that no one shall be allowed to manufacture evidence in his own favor. A party's admissions may be shown by the opposite party as evidence against him, but he can not show them in his own favor, except sometimes where they can be regarded as a part of the *res gesta*, such as to show what he intended by certain acts claimed to amount to a dedication of a highway and the like.   What he said at the time of the claimed dedication may be shown in his own favor to rebut any intention of dedication.   If this were the rule as claimed in this case how easy it would be for a party in signing a plea to intentionally write his name differently from the disputed signature and then invoke it as proof that the signature was not genuine.   If his signature with which the comparison was sought to be made for the purpose of disputing a signature which was sought to be proven against him had been written long before, when no motive for writing differently from his real handwriting existed, less reason for rejecting it as evidence would exist; but we doubt much whether then it would be allowed in his favor, so strenuous is the rule of law that a party shall not be allowed to invoke his own declarations and acts in his own favor.   But in this case the strongest reasons are against it. The cases of Brobston v. Cahill, 64 Ill. 356,  Porter v. Venton, 14 Mich. 287, and First National Bank v. Rorst, 41 Mich. 709, and other like cases cited, were cases where the signature was invoked against the defendant and not for him.   See, however, Chandler v. Le Baron, 45 Me. 536;  Williams v. State 61 Ala. 39;  Sanderson v. Osgood, 52 Vt. 311.   In Massey v. Farmers' National Bank, 104 Ill. 328, it was held that a witness who had been called to prove the handwriting of the defendant could not be asked on cross-examination in regard to the genuineness of certain signatures of the defendant which had been written on a paper sixteen times and gotten up for the occasion and to test the witness' knowledge.   The court in commenting on the matter quote with approval this passage from 1 Wharton on Evidence, Sec. 710, to wit:  "We have already seen that a party can not

make testimony for himself by writing specimens for the instructions of witnesses afterward to be called, as to his handwriting.    By the same reasoning a party can not be permitted to get up in this way test papers to be used subsequently for comparison of hands." And the Supreme Court held that the " admission for the purpose declared would be objectionable," and quotes the case of Guffets v. Ivery, 11 A. & E. 322, in which the court say: "We must not allow papers which are not in evidence in the cause to be let in for any purpose." So it will be seen that the Supreme Court approve two rules of law laid down by the above authorities : first, that a party can not be allowed to manufacture signatures to be used in evidence for any purpose in his own behalf; and secondly, papers not in evidence in the case, can not be used for any purpose.    Also, a witness may not procure his knowledge of the defendant's handwriting by examination of his genuine signatures made before even the controversy arose, if so examined with a view of becoming a witness, for the reason that the knowledge thus obtained would not be reliable and the witness' judgment unbiased, if the information were gained under such circumstances.    Board of Trustees v. Misenheimer, 78 Ill. 22.    So strenuous is the law, that not even a witness can be educated for the purpose of being called as such when the signature of a party is in question, much less, we conceive, could a party to a suit be allowed to write his own signature and introduce it in evidence to prove that it differs from the signature claimed to be his upon which recovery is sought.    The temptation to write it purposely variant would be very great, and hence under the principles of the law, it could not be allowed.    It would be much more dangerous to allow it than to allow a disinterested person to acquire knowledge by examination of defendant's genuine signature made before the controversy arose, to enable him to be a witness as to the genuineness of the one in dispute. The danger arising from bias in the one case would not equal that to be apprehended from self-interest in the other.    The case of Springer v. Hall, 83 Mo. 693, cited by appellee, appears not to be in point, but against his contention.    The court in

that case held it was not allowable for the defendant to introduce his own signature to his sworn answer in evidence to disprove by comparison the genuineness of his signature in dispute. In Frank v. Sanbourn, 31 Ill. App. 592, it was held that the signature to an appeal bond was not admissible as evidence against the defendant to show his handwriting by comparison. See also Snow v. Wiggins, 19 Ill. App. 542.

The appellant also objects to the giving by the court of appellee's seventh instruction which is as follows:

"You (the jury) are not bound to believe any testimony because any witness or witnesses have given such testimony although testified to by any number of witnesses. You may and should disregard it and refuse to follow it if you do not believe it to be true."

We think the instruction is faulty and has a tendency in its present form to give the jury to understand that it might arbitrarily disregard and believe it untrue—even the testimony of any number of the witnesses. This would be improper; for the testimony of all witnesses, who are unimpeached in any of the modes known to the law, should be given its due weight and consideration, when taken in connection with all the other evidence and circumstances in evidence, and even when impeached it shall not be disregarded and rejected, where it is corroborated by other credible testimony. All the unimpeached testimony should be fairly considered and even the impeached, if any, where corroborated, and reconciled if possible, and where that can not be done, then the jury should believe that to be true and follow it, which, under all the evidence and circumstances in evidence, in the minds of the jury is most entitled to belief. We think this instruction should not have been given in the form it was. But as the instruction has no particular application to either party and is an attempted statement of an abstract proposition of law, it might not of itself, though improper, be sufficient grounds for reversal. Reynolds v. Greenbaum, 80 Ill. 416. In Evans v. George et al., 80 Ill. 51, the Supreme Court, speaking on the subject of the right of a jury to disregard evidence, say: "The proposition that the jury have the right to disbelieve such wit-

nesses, as, in their judgment, under all the circumstances of the case, are unworthy of belief, is not the law. The jury, although they are the judges of the credibility of witnesses, have no right to arbitrarily disbelieve the testimony, unless where such witnesses have wilfully and knowingly sworn falsely to material facts in the case." It is the very plain implication in instruction No. 7, given for defendant, that it might so do, that is objectionable. Where there is a conflict in the evidence it is for the jury, however, to determine which side to believe and which witnesses to believe. Durant v. Rogers, 87 Ill. 508; Peeples v. McKee, 92 Ill. 397; but testimony can not be wilfully disregarded. Hartford L. In. Co. v. Gray, 80 Ill. 28. Many more cases might be cited, but this is sufficient.

The appellant objects to the action of the court in allowing too liberal a cross-examination of his witnesses, Nelson and George Jones; also that the appellee was allowed to ask and have answered improper questions propounded to his own witnesses, Samuel Ramsey and William Hortzell. It will not be necessary for us to go into full details as to these questions, but the scope of them, as far as the cross-examination of Nelson and Jones was concerned, was to show their peculiar interest, bias and feeling in the case; to show that they became the owners of some of the notes; that they had received money out of the sale of the notes; in order to show their connection and interest in the entire transaction which might affect the credibility of their testimony. These questions were not asked for the purpose of showing a want or failure of consideration of the notes as appellant supposes. It was not improper on cross-examination to show by Nelson, if appellee could, that he was trying to procure one Zellers to put up a job on appellee in relation to this same matter of the notes. It had a direct tendency to show the connection Nelson had in the matter of procuring the notes, and to show his interest and feelings in the matter. The same class of questions was properly put to George Jones to show his connection and interest in the transaction, and it was also proper to inquire of him if he had not applied to Jacob Ehling to

have him assist in consummating the transaction with Snyder (appellee) both for the purpose of showing his interest and feelings and to lay a foundation for impeachment if he denied it. It was competent in both views. In this kind of a case as wide a latitude as possible should be given to the cross-examiner, in order to elicit the whole truth, and enable the jury to fairly judge of the weight that should be given to the witness' testimony. A sharp conflict existed between those witnesses and appellee and his witnesses, as to the question of the claimed note forgery, and the jury should have all the light possible within the limits of the law to enable it to form a correct judgment. We do not regard these matters as immaterial, as is insisted by appellant's counsel, but material, because they go to impeach or discredit the testimony of the witnesses on the very point of the signing of the notes, which was the very gist of the inquiry. Appellee has a right to show that appellant's witnesses had made statements inconsistent with what they swore to on the stand, or tending to show inconsistency.

It was proper also for appellee to show by his witness Ramsey the habits of appellee in regard to giving his notes, but we think the inquiry should be confined to his general reputation in that regard, the same as to show the general reputation for peace and quiet in a criminal case where the defendant is charged with a criminal assault, and his general reputation for peace is relied on to rebut the charge of criminal intent. It is only a circumstance going to show the probability of the signing the notes, and should be confined to general reputation of his habit in that regard, if he had any. It was proper to show all about the drinking of the beer and mixing whisky with it, if that was the case, and everything that took place just prior to the alleged signing of the notes. It all bears upon the main question and enables the jury to see the entire transaction and the circumstances as they were.

We are inclined to think that the court erred in allowing the witness Hortzell, called by appellee, to show in chief what reasons George Jones gave for wanting appellee to go to Chillicothe with him on September 28th, or that he agreed

to give him $5. It would be proper to show that Jones requested appellee to go and that he went; but if it is intended, as we suppose it to be, to show, by the statement of Jones, a conspiracy among Nelson, George Jones and Morton to entice appellee away by artifice in order to procure the signing of the notes or other improper purpose, we think it is incompetent. It is not competent to prove a conspiracy among several parties by the declarations of either of them separately. The conspiracy must first be shown to be formed, and then the acts and declarations of each member, made in pursuance of the general purpose, may be given in evidence against all. In this case the declarations of George Jones, and his acts, ought not to be given in evidence as against the other two unless the proper foundation is laid. These questions to and answers of Hortzell ought not to have been allowed.

We have now reviewed and passed upon all objections raised on the record to the proceedings on the trial by appellant, and it now remains to consider the questions raised by the cross-errors as signed by appellee. As this case must go back for a new trial it is quite necessary to pass on them, that no error may be committed on the next trial.

First, we think the court erred in not allowing Ehling to state whether George Jones had not requested him to assist in "making up a deal or notes on or with Peter Snyder." This Jones had denied, and it was competent to contradict him by way of impeachment. If Jones had made such a proposition to Ehling before the notes were signed or the alleged contract, it would be competent to question him about it on cross-examination, in order to weaken the force of his testimony before the jury as to whether the notes were signed or not. It therefore was a question material to the issue, and a point of attack for an impeachment. Ray v. Bell, 24 Ill. 450; Hunter v. Harris, 24 Ill. App. 640. If proper foundation is laid, Ehling's testimony should be allowed.

It was proper for Jones to answer the question if he "now said he heard the bargain" (about selling the patent right to appellee). The court should have allowed it, and it was competent to answer "what was the first he knew of the transaction."

We see no other errors than the above in the cross-errors assigned. For the reasons above set forth the judgment is reversed and the cause remanded.

*Reversed and remanded.*