[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 191 
This case involves the validity of the last will and testament of Theresa Astolas. Proponents offered proof testatrix signed her will by mark. Contestant produced a professional handwriting expert, whereupon the following occurred:
"Q. Can you tell by looking at these signatures there and that 'X' mark, whether or not those writings are made by the same person or not; and if you can, what is your reason for so stating?
"A. Yes. * * * I find that the cross mark contains the same habits as I find in the signature in regard to the pen pressure or line quality, that is, the smoothness of line, and also in its slope. The signature is written automatically, and the cross mark is written also automatically, that is offhand. * * * *Page 192 
"A. That is my opinion based on this comparison with the 'X' marked, that 'X' written by the same hand that wrote the name 'Tracey Astolas,' and 'Her Mark.' There is no doubt in my mind that it is the same handwriting and written with the same ink. * * *
"A. I base my opinion on the fact that a person of that age and her education would not make a mark similar to this. If she was competent to make a mark, it would contain her habits and not the habits of the writer of that name, 'Tracey Astolas.' "
The witness gave it as his opinion the testatrix did not sign the will in question by mark.
"Q. Is it your opinion * * * that this mark could not be made by a woman 54 years old in as perfect a condition as that mark is, that couldn't read or write the English language?
"A. Yes, sir."
Proper objections were made to the introduction of all this testimony. Proponents assigned appropriate errors in their reasons and grounds of appeal. In submitting the case to the jury, the court charged:
"Ordinarily a witness must testify to matters within his observation; he cannot testify to opinions; he cannot testify as to conclusions. But there is a different rule in the case of a so-called expert, that is, somebody that does or is claimed to have unusual knowledge of a certain subject. For instance, the civil engineer, on matters of engineering; the doctors, on matters of medicine, anatomy, and so forth. And the law permits a so-called expert to express an opinion or to give his conclusions from certain facts, provided he is a competent expert. But the weight of the opinion is for the jury, and you regard the testimony of an expert just as you do the testimony of any other witness. *Page 193 
"Now, it is true, a doctor will give you, for instance, the cause of death of a person, as strangulation, heart block, internal hemorrhage following gunshot wound, or any one of a multitude of things. That might be a subject of dispute. What does the layman know about it? You would not know; I would not know whether he died of concussion of the brain or anything else, do you see? Now, the so-called medical expert gives his opinion, we will say, on the cause of death; but the witness is required to lay down the basis of the facts on which he gives an opinion. It is for you to say how good, or how not so good that opinion is. Look at his testimony, the testimony of an expert just as you look at the testimony of any other witness; judge it by the same standards."
There is no claim the expert witness offered was acquainted with testatrix; had ever seen her write; or had ever seen her genuine mark. The basis of his opinion was the testatrix was 54 years of age, and unfamiliar with the English language. In his testimony after recess, he added another reason for his conclusion, that the cross was made rapidly by an accustomed hand.
The question of expert testimony on handwriting was considered in Vinton v. Peck, 14 Mich. 287, and I can add nothing of importance to the opinion rendered therein.
"Every one knows how very unsafe it is to rely upon any one's opinions concerning the niceties of penmanship. The introduction of professional experts has only added to the mischief, instead of palliating it, and the results of litigation have shown that these are often the merest pretenders to knowledge, whose notions are pure speculation. Opinions are necessarily received, and may be valuable, but *Page 194 
at best this kind of testimony is a necessary evil." In reFoster's Will, 34 Mich. 21, 25.
"Expert evidence is only admissible on the theory that the jury cannot be supposed to comprehend the significance of facts shown by other testimony which needs scientific or peculiar explanation by those who do comprehend it." People v. Millard,53 Mich. 63, 75.
Where the court or jury may make their own deductions, they must not be made by the witness. Bockoff v. Curtis, 241 Mich. 553.
Witnesses generally must testify to the facts upon which their opinions are based; and their opinions are no stronger than the facts upon which they are based. In re Lembrich'sEstate, 243 Mich. 39.
"The primary rule, concerning all evidence, is, that personal knowledge of such facts as a court or jury may be called upon to consider, should be required of all witnesses, where it is attainable." Evans v. People, 12 Mich. 27.
"The experience of courts with the testimony of experts has not been such as to impress them with the conviction that the scope of such proofs should be extended." People v. Morrigan,29 Mich. 4.
A mark is not handwriting. It is ordinarily used because the signing party cannot write. Even people 54 years of age may move rapidly and use an accustomed hand. Those speaking the English language have no monopoly of the ability to make a cross.
In Thompson v. Davitte, 59 Ga. 472, 482, the court said of the mark of a witness to a will:
"The code * * * pronounces a mark sufficient, on the sole condition that the witness shall be able to swear to it. This is all the heraldry of the matter. *Page 195 
Nothing like a system of crests or bearings is contemplated; not even any special hook or claw on which the mind can hang recognition. As best it can, the memory may lay hold, and hold on, and the conscience swear to it. A court cannot declare any peculiarity necessary, where the witness needs none. It is not improbable that those who make marks for default of skill in making letters, have an aptitude of their own in distinguishing marks that to ordinary eyes look alike. The faculty may be something like that of supplying an absent sense, by novel and ingenious applications of one or more of the remaining senses."
In Phoenix National Bank v. Taylor, 113 Ky. 61, 73, (67 S.W. 27) where a signature by mark was in dispute and other documents signed by the mark of the party were admitted for comparison, it was said:
"We are unable to perceive where any legitimate help or light could be thrown upon the matter in dispute by the comparing of the characteristics of the two handwritings. It is that peculiar characteristic attaching to the mechanical formation of letters by which they may be identified as having been made by one particular person that justifies admitting other handwriting of the same party for comparison to prove that the disputed one was probably executed by the same person who wrote the genuine ones. We are therefore of the opinion that none of the signatures to the mortgages in question (unless it be the one of June, 1899) should have been submitted to the jury."
Where one testified he signed a mortgage by his mark but did not identify the paper in dispute as having been the paper signed by him, it was held not to have been properly executed because not properly proved. Ballow v. Collins, 139 Ala. 543
(36 So. 712). *Page 196 
In Fogy v. Dennis, 3 Humph. (22 Tenn.) 47, a son was permitted, from his acquaintance with the peculiar manner of making his mark for a signature by often seeing him do it, to give his opinion the controverted signature of his father was genuine.
In Strong v. Brewer, 17 Ala. 706, the question of the testimony of experts as to signatures by mark was considered by the court. It was there said:
"The general rule, which admits of proof of the handwriting of a party, is founded on the reason, that in every person's manner of writing there is a peculiar prevailing character, which distinguishes it from the handwriting of every other person, and therefore, that one, who knows the handwriting of the party, is competent to testify to it. This kind of evidence too, like all other probable evidence, admits of every degree, from the lowest presumption to the highest moral certainty. 1 Phillips, Evidence, 484. The degree of weight to be attached to it depends not only upon the character of the witness, but also upon the opportunity he has had of acquiring a knowledge of the party's handwriting. It may be more difficult to acquire a knowledge of a simple mark, by which an illiterate man executes a deed, than the knowledge of the handwriting of one, who can write his name in full, but we cannot perceive why it may not be done. In some instances, the peculiarity may be as strong as that which marks the characters of one who can write, and in other instances, not perhaps so great; yet in all, we apprehend, would be found something distinct and peculiar, which would enable one, who had frequently seen the party make his mark, to know it. We can, therefore, see no reason why one, who has frequently seen a party make his mark to deeds or other writings, and who can testify that he believes that he knows it, may not be permitted to prove the execution of a deed thus subscribed. We are somewhat *Page 197 
surprised that we can find but one case in which this question arose, and that is the case of George v. Surrey, M. M. 516 (173 Eng. Rep. 1243), referred to in 3 Cowen and Hill's notes to Phillips, Evidence, 1323, in which it was held, that a witness who had seen the party, whose signature he was called to prove, make her mark, might be permitted to testify to the execution of the instrument."
In Travers v. Snyder, 38 Ill. App. 379, the same question was before the court. It was said:
"This brings up two questions, whether there can properly be any comparison between one cross mark, or mere mark, and another, and can an interested party to a suit be allowed to manufacture evidence for himself. We are of the opinion that both questions ought to be decided in the negative. How can simply a mark be recognized as that of any particular person, without any proof of any particular characteristic by which it can be distinguished? And it seems to us that it proves nothing that one cross or mark is like another. It seems to us that it would be very unsafe, and lead to dangerous results, to allow such comparisons to be made and taken as evidence, unless at least some proof were made that the defendant's mark had some established characteristics, like a handwriting, that would enable it to be recognized. A mere cross or mark cannot be identified, and it therefore stands for itself alone. We refer to the authorities on this point, cited in appellant's brief, which seem to be in point, and no authority is cited to the contrary, nor have we been able to find any. Gilliam v.Perkinson, 4 Rand. (25 Va.) 325; Gregory v. Baugh, 4 Rand. (25 Va.) 611, 636; Engles v. Bruington, 4 Yeates (Pa.), 345 (2 Am.Dec. 411); Watts v. Kilbourn, 7 Ga. 356;Tagiasco v. Molinari's Heirs, 9 La. (O. S.) 512 (5 Curry, 319);Jackson v. Van Dusen, 5 Johns. (N.Y.) 144 (4 Am. Dec. 330);Carrier v. Hampton, 11 Ired. (33 N.C.) 307; State v. *Page 198 Byrd, 93 N.C. 624; 2 Bentham, Judicial Evidence, 461."
In State v. Tice, 30 Ore. 457 (48 P. 367), a similar question was before the court, and it was there said:
"By section 764 of Hill's Code, it is provided that 'the handwriting of a person may be shown by any one who believes it to be his and who has seen him write, or has seen writing purporting to have been his, upon which he has acted or been charged, and who has thus acquired a knowledge of his handwriting.' It was, therefore, competent for the witness to testify from his own knowledge of the handwriting of the accused, when acquired in any of the modes pointed out, and, under the authorities, such testimony may extend to the mark of Nancy M. Love: George v. Surrey (1830), M. M. 516 (173 Eng. Rep. 1243); Sayer v. Glossop, 2 Exch. (W. H. G.) 409 (2 Car. Kir. 694, 17 L. J. (N.S.) Ex. 300, 154 Eng. Rep. 552, 12 Jur. 465); Strong v. Brewer, 17 Ala. 706; Fogg
v. Dennis, 3 Humph. (22 Tenn.) 47; Lansing v. Russell, 3 Barb. Ch. (N.Y.) 325; Little v. Rogers, 99 Ga. 95 (24 S.E. 856); Lawson's Expert Evidence, 296. But they are not uniform, and some judges have strongly characterized such attempts to establish the identity of a mark as impossible and unsound. InEngles v. Bruington, 4 Yeates (Pa.), 345 (2 Am. Dec. 411), it is said that 'to attempt to prove a mark to a will would be idle and ludicrous.' In a later case from the same State (Shinkle v. Crock, 17 Pa. 159), Lewis, J., says: 'Where a mark, on inspection, appears to have nothing in its construction to distinguish it from the ordinary marks used by illiterate persons to authenticate their contracts, it is not the subject of this description of evidence.' Van Ness, J., in Jackson v.Van Dusen, 5 Johns. (N.Y.) 144 (4 Am. Dec. 330), says: 'The testator having made his mark, no evidence, of *Page 199 
course, could be given or expected, to prove his handwriting,' and in Carrier v. Hampton, 11 Ired. (33 N.C.) 311, Ruffin, C.J., says: 'For, although in some very extraordinary instances, the mark of an illiterate person may become so well known as to be susceptible of proof, like handwriting, yet, generally, a mark, a mere cross, cannot be identified.' Considering the manner in which marks of persons incapable of writing their own signatures are usually made, by merely touching the pen while the scrivener forms the character, it is a matter of doubtful propriety whether any person ought to be allowed, as a matter of evidence, to identify such a mark as a handwriting; but the mark of some persons, by reason of methods of their own adoption in its formation, and its inherent peculiarities, might be capable of identification, and we are of the opinion that such evidence ought to be permitted to go to the jury, but the attending circumstances touching the habits of the person whose mark is in the balance, his accustomed manner of making the same, and the peculiarities attending it which render it capable of identification, should be carefully considered and scrutinized in determining the weight to be ascribed thereto."
A similar question was before the court in Re Hopkins Will,172 N.Y. 360 (65 N.E. 173, 65 L.R.A. 95, 92 Am. St. Rep. 746), where an expert witness was permitted to testify that certain marks upon a will were not made by the same person who had signed the same. The court held that such witness, even though an expert in handwriting, was not competent to testify thereto. The question was fully discussed and the authorities reviewed. Attention was called to Lansing v. Russell, 3 Barb. Ch. (N.Y.) 325, where the chancellor said:
"I think the testimony of the experts, who had been in the habit of examining signatures and marks *Page 200 
of young persons as well as of aged ones to prove that the marks to these deeds could not have been genuine marks of the unaided hand of old age and decrepitude, was properly received, upon the trial, as legal evidence to establish that fact."
But it was pointed out that the testimony of the experts was rendered unimportant because the party executing the instrument, in making his mark, asked his son, who was standing by, to steady his hand, and thereupon the son took hold of his hand and assisted him in making the mark.
It pointed out that Kowing v. Manly, 49 N.Y. 192, 203 (10 Am. Rep. 346) and Moody v. Rowell, 17 Pick. (34 Mass.) 490 (28 Am. Dec. 317), did not approve the rule laid down in Lansing v.Russell, supra, but that the case was cited for the purpose of showing the question under consideration was not controlled by those cases. The court pointed out:
1. An expert may doubtless be able to determine whether one mark is made over another;
2. Whether a mark is made by a trembling or steady hand; and
3. If familiar with inks, he may be able to determine nearly the age or the time the writing was made.
The court said:
"The mark of an individual to an instrument may be proved by those who have seen him make his mark to other instruments where the mark contains some peculiarity which they have noticed and observed, thus enabling them to distinguish it from other marks. Strong v. Brewer, 17 Ala. 706; Paisley v. Snipes, 2 Brev. (S.C.) 200; George v. Surrey, M. M 16 (173 Eng. Rep. 1243). But this class of evidence is dependent upon the familiarity of the witnesses with the peculiarities of the persons making *Page 201 
the cross, and is not the subject of the opinion of experts whose only knowledge or familiarity of writings is obtained by comparison."
It quoted from the opinion in Jackson v. Van Dusen, 5 Johns. (N.Y.) 144, 155 (4 Am. Dec. 330):
"The testator having made his mark, no evidence of course could be given or expected to prove his handwriting."
from Jackson v. Jackson, 39 N.Y. 153, 160:
"That when it is necessary to prove an execution of an instrument by a 'marksman,' the proof is evidence of the making of the mark. The writing of the name around it is no essential part of the evidence."
from Shinkle v. Crock, 17 Pa. 159:
"We have gone far enough in receiving the bare belief of a witness, founded upon a comparison of writing in dispute, with some specimen of which he may have but a faint recollection. Where a mark, on inspection, appears to have nothing in its construction to distinguish it from the ordinary marks used by illiterate persons to authenticate their contracts, it is not the subject of this description of evidence."
from Gilliam v. Perkinson, 4 Rand. (25 Va.) 325:
"Where the name of a witness is written by himself, therefore, it may generally be proved with something like certainty. But here, there was no writing. The name of the witness is written by another, and he makes a cross mark; perhaps, the first and last he ever made in his life. To attempt to prove such a signature as this would be a mockery of justice."
and from Jones v. Hough, 77 Ala. 437, which quoted Gilliam v.Perkinson, supra; *Page 202 
from Watts v. Kilburn, 7 Ga. 356:
"Where the mark of a person is written by another and he makes a cross mark, there is nothing distinctive to fix its identity."
(Though what the Georgia court said in this case was:
"The name of the witness is written by another, and he makes a cross mark. In this there is nothing distinctive to fix its identity.")
and Travers v. Snyder, 38 Ill. App. 379, 382:
"How can simply a mark be recognized as that of any particular person without any proof of any particular characteristic by which it can be distinguished? * * * A mere cross or mark cannot be identified, and it, therefore, stands for itself alone."
The court concluded:
"We have now reached a case where it is sought to establish that mere marks made over the signature were not made by the person who wrote the signature, by the opinion of an expert. This is carrying the use of the opinions of experts beyond any reported case to which our attention has been called, and we now think that the time has come in which a limitation should be placed upon this class of evidence. * * * the testimony is too dangerous and uncertain to be received as evidence and considered by either the court or jury."
Ausmus Moon v. People, 47 Col. 167 (107 P. 204, 19 Ann. Cas. 491), reviewed the authorities and held the testimony there offered was admissible. The basis of the holding is thus stated:
"In the case at bar the deceased's mark has many peculiarities and was apparently so uniformly used by him for such purposes as to make it well-known as his mark. It is clearly evident, from the enlarged photographs and the samples in evidence, that his conception of a cross was the Greek crucifix, *Page 203 
and such cross was his adopted signature. This evidence was properly admitted. The weight to be attached to it was for the jury under proper instructions of the court."
Rogers on Expert Testimony (2d Ed.), does not mention or discuss the question here involved.
Lawson on Expert and Opinion Evidence (2d Ed.), p. 350, lays down the rule that one who has seen another make her mark and who is able to point to some peculiarity therein may express an opinion the mark in question is genuine. But all of the cases cited by Lawson are those where the witness was familiar with the signature by mark of the person whose signature was in question; had seen the person make such mark; and there was some distinguishing feature, some fixed characteristic, of such mark by which it could be identified. These witnesses were allowed to give their opinion as to the genuineness of the mark in question. None of them were cases where the witness had never seen the person whose mark was in question; had never seen her make her mark; had never seen her signature by mark on any papers where the genuineness of her mark was conceded; and where there was no peculiarity, no fixed characteristic, of the mark in question by which it could be identified as the mark of the person in question. To permit a so-called expert to express an opinion based upon a comparison of marks is denied by the authorities.
When the testimony of the expert here is examined, it amounts to saying there is nothing peculiar, individual or characteristic or out of the ordinary in the cross in question to distinguish it from any one of a hundred million others; and because there is nothing of this kind, it is not genuine, — that is, there being nothing out of the ordinary in the mark in question, it is not her genuine mark. *Page 204 
The rule seems to be an expert witness may not testify to the signature of a witness by an ordinary mark or cross. Where the mark appears to have something in its construction to distinguish it from other ordinary marks, something by which it may be identified, something so uniformly used by the party that it may be identified as peculiar to her signature or her mark, where some established characteristic of the mark of the person is apparent, and the witness is familiar with the signature by mark of the person whose mark is in question, the witness may testify to his opinion based upon having seen the witness make her mark, upon comparison with the questioned document, upon the same basis that he may testify in relation to handwriting.
But all this class of evidence is dependent upon the familiarity of the witness with the peculiarities of the cross made by the person, and is not the subject of the opinion of experts whose only knowledge of the mark in question has been obtained by comparison.
The court was in error in receiving the testimony of the professional handwriting expert as to the mark or cross in question.
Judgment of the trial court is reversed, and the case remanded for a new trial.
NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred. *Page 205