J. H. RANGELEY, JR., v. C. R. HARRIS AND WIFE, MINNIE HARRIS.

(Filed 8 April, 1914.)

1. Bills and Notes—Fraud and Collusion—Trials—Evidence—Principal and Agent—Burden of Proof—Contracts—Consideration.

The plaintiff sued defendant on a note of the latter given for the sales rights of a patented article in a certain territory, the contract or deed therefor being signed by the plaintiff as agent. Parol evidence of the contents of a written appointment of the plaintiff as agent of D. was received without defendant's objection. There was testimony tending to show that defendant bought the sales rights solely for A. at his request and upon his statement that the plaintiff, a partner of his, would not deal with him; and also that A., for whom the plaintiff assumed to act, was in fact the same person as D. The defendant pleaded as a defense, fraud and collusion between the plaintiff and A., and a lack of consideration for the note: *Held,* (1) the burden of proof was upon the plaintiff to establish his agency for D., the sufficiency and credibility of the testimony being for the jury; (2) the evidence of fraud and collusion between the plaintiff and A. was sufficient to sustain an affirmative verdict on that issue and to set the transaction aside for failure of consideration.

2. Witness, Expert—Qualifications—Appeal and Error—Assignments of Error.

The findings of the trial judge upon the question of whether a witness had qualified as an expert, when there is evidence

RANGELEY v. HARRIS.

thereof, is conclusive on appeal; and when an assignment of error relates solely to the sufficiency of such qualification, it may not be extended so as to include objections raised otherwise to his testimony.

APPEAL by plaintiff from *Lane, J.,* at October Term, 1913, of SURRY.

Civil action, tried upon these issues:

1. Were the checks and note set out in the complaint executed by defendants without a consideration? Answer: Yes.

2. Are Joe Allen and J. D. Diffie the same person? Answer: Yes.

3. Did J. D. Diffie make false and fraudulent representations to defendants, as alleged in the answer? Answer: Yes.

4. If so, were they made with the knowledge and consent of J. H. Rangeley, Jr.? Answer: Yes.

5. Were the defendants induced by reason of said false and fraudulent representations to execute the checks and note set out in the complaint? Answer: Yes.

6. Is the plaintiff indebted to the defendants, and if so, in what sum? Answer: Yes; in the sum of $100.

7. Are the defendants indebted to plaintiff, and if so, in what amount? Answer: No; nothing.

The court rendered judgment against the plaintiff, who appealed.

*J. C. Buxton, J. F. Hendren, W. L. Reece for plaintiff.*
*R. L. Burns, W. F. Carter for defendant.*

BROWN, J. This action is brought by the plaintiff to recover of the defendant C. R. Harris upon two bank checks, for $100 and $200 respectively, and to recover of both defendants upon a note for $400, all payable to the plaintiff.

The defendants plead a total lack of consideration, and that the execution of the checks and note were obtained by the false and fraudulent representations and conduct of the plaintiff. The plaintiff assigns error: "The refusal of the court for judgment at the close of the defendants' testimony on the checks and note sued on, which motion was renewed at the close of all the

testimony, upon the ground that there was no evidence in the defendants' testimony to sustain the allegations contained in their answer."

The only consideration for the checks and note sued on is an alleged assignment of a certain trade-mark No. 7077 granting to C. R. Harris the exclusive right to make and sell Snowflake Soap within a certain territory. The trade-mark was registered in the name of Mary E. Taylor, who assigned it to J. D. Diffie. The assignment to the defendant is signed J. D. Diffie by J. H. Rangeley, Jr., agent.

A paper-writing purporting to appoint H. M. Word and J. H. Rangeley, Jr., "agents and attorneys in fact for and in my name to execute deeds to the Mary E. Taylor patented trade-mark" is in evidence, signed J. D. Diffie by W. Alfred.

There is nothing in evidence tending to prove any authority to W. Alfred to make such conveyances for J. D. Diffie except this testimony of J. H. Rangeley, Jr.: "I saw paper-writing." (Objection by defendants.) It said:

"I, J. D. Diffie, do hereby appoint Alford for my agent to sell unsold territory in the United States to sell Snowflake Washing Powder, and that he (Diffie) ratified all the sales heretofore made." Name of J. D. Diffie was to this paper and notary seal attached and signed by some one as notary public. It is also said he was to make deeds and appoint agents.

There is no allegation in the pleadings that such power of attorney has been executed, and either lost or destroyed. There is no evidence that search has ever been made for it, and no foundation laid to admit parol evidence of its contents. The plaintiff in his evidence does not remember the name of the notary before whom it was probated. But as the court admitted this evidence, the defendants had a right to attack the sufficiency of it, and the credibility of the witness before the jury under the first issue, for if the plaintiff failed to satisfy the jury as to his right to execute the assignment to the defendant, the consideration totally failed.

It is not contended there was any other. The burden of proof was on the plaintiff to prove his agency and his right to execute the deed to the defendant, and it appears he failed to do so.

There is also evidence tending to prove that a fraudulent conspiracy was entered into between the plaintiff and J. D. Diffie to sell this trade-mark to the defendant. The defendant testified that he was acting for one Joe Allen in purchasing the trademark, viz.:

"Before I wired the plaintiff about territory, a man known to me as Joe Allen called me up over the telephone and told me to buy out his partner, the plaintiff in this action, for him, Joe Allen, as he and Rangeley were at outs. I knew Joe Allen's voice. He asked me to give my note and checks for the territory controlled by Rangeley, and not to let Rangeley know that I was buying for him (Allen). He said that Rangeley would not sell to me if he knew that I was buying for him (Allen). And Allen said, 'As quick as you buy of Rangeley, to notify him' (Allen), and he would come over and take the territory off my hands and pay me the amount I had to pay for the territory. Allen said do this for him as a brother Mason." Witness testified he was a Mason, and that Joe Allen had before this time boarded at his home for two weeks, and that Allen had convinced the witness that he was a Mason.

Witness testified:

"I then asked Allen what price I should pay for the territory Rangeley had control of, and he said, "Buy at any price." I told him that I thought we had best agree upon a price, and he (Allen) said for me to offer Rangeley $800 for the territory. He (Allen) told me to communicate with Rangeley at Elkin, N. C., and I did so the next day, and Rangeley agreed, in reply, to take $800, the price I offered him.

"Joe Allen wanted me to purchase all the unsold territory controlled by Rangeley. Rangeley had control of about thirty-four counties. I would not have bought it for myself from Rangeley. I bought for Joe Allen."

There is some evidence that J. D. Diffie, the owner of the trade-mark, and Joe Allen were one and the same person. From all this defendants contend that there was a fraudulent conspiracy between the plaintiff and J. D. Diffie, whereby the defendant was to be induced to buy the trade-mark for Diffie alias Allen, who was already the reputed owner of it.

There are many other "ear-marks" of fraud about this transaction which it is unnecessary to discuss. We think his Honor did not err in submitting the issue of fraud to the jury upon the evidence introduced.

The plaintiff further assigns error: "That the court erred in admitting the statement in the deposition of J. E. Caviness, in his opinion, the handwriting on the Diffie and Allen letters were the same, on the ground that Caviness had never qualified himself as an expert."

The testimony objected to was admitted for the purpose of showing that Diffie and Allen were one and the same person. The witness compared specimens of the handwriting of each, and testified that the writing was done by one and the same person. While we are inclined to think such evidence competent for the purpose of identifying Allen and Diffie as one and the same person, the question is really not raised by the assignment of error, because the assignment is limited by its terms to the ground that Caviness was not an expert. We think the witness qualified himself, under the decisions of this Court, to testify and express an opinion as to the handwriting of the Allen and Diffie letters. The court, being of the opinion that witness had so qualified himself to express an opinion, and finding the same to be a fact, told the jury that it was for the jury to say what weight should be given the opinion and testimony of the witness. In this there was no error. Jones on Evidence, sec. 546 (559), p. 688; Cyc., vol. 17, p. 156; Beverly v. Williams, 20 N. C., 378; Yates v. Yates, 76 N. C., 144 (149).

There is some evidence that the witness is an expert, and therefore the finding of the court to that effect is final. S. v. Wilcox, 132 N. C., 1120; Abernethy v. Yount, 138 N. C., 345; Nicholson v. Lumber Co., 156 N. C., 66.

There are only two other assignments of error, and they relate to questions of evidence. We think they are without merit, and need not be discussed.

No error.