In the Matter of the Probate of the Paper Propounded as the Last Will and Testament of PETER CAFFREY, Deceased.

BERNARD A. CAFFREY and Others, Appellants; MATTHEW J. O'BRIEN, Individually and as Executor, etc., of ANNIE O'NEILL, Deceased, Respondent.

First Department, November 3, 1916.

Will — probate — proof of due execution — signature by testator making mark — expert testimony as to making of mark.

In a proceeding for the probate of a will signed by the testator making a mark, the three attesting witnesses, one of whom was a lawyer, testified as to the due execution of the will. The lawyer testified that the mark

was made in this way — the testator "put his fingers on the pen and I moved it," while the other two witnesses testified that he made the mark without assistance. The fact, however, according to the testimony of the three witnesses, that the testator signed the will by making the mark, is uncontradicted.

*Held*, on all the evidence, that the will was properly signed and executed by the testator;

That, under the circumstances, the surrogate did not err in rejecting the testimony of an expert by whom it was sought to prove that the mark by which the will was signed was not made by the testator.

APPEAL by Bernard A. Caffrey and others, contestants, from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 26th day of May, 1916, admitting to probate the will of Peter Caffrey, upon the verdict of a jury rendered by direction of the court.

*Winifred Sullivan*, for the appellants.

*Charles P. Howland*, for the respondent.

McLAUGHLIN, J.:

This appeal is taken from a decree of the Surrogate's Court of the county of New York, entered upon a verdict confirming the probate of the will of Peter Caffrey, deceased. Caffrey died on the 16th of November, 1913, leaving a will executed on September 13, 1913, by which he devised and bequeathed all his estate to one Annie O'Neill, the sole executrix therein named. On the 19th of March, 1914, she presented the will for probate, and a citation was then issued to all of the then known heirs at law and next of kin. Two of the testator's nephews appeared on the return of the citation and filed objections to the probate. In that proceeding the subscribing witnesses to the will were examined and proof taken touching the execution of the will and the competency of the testator to execute it. At the conclusion of the hearing the surrogate overruled the objections, admitted the will to probate and issued letters testamentary to the executrix therein named. On the 13th of June, 1914, Annie O'Neill died, leaving a will in which Matthew J. O'Brien was the sole devisee and legatee and named as executor therein. Matthew J. O'Brien was not related either to Peter Caffrey or Annie O'Neill. Letters testamentary were issued to him in Novem-

ber, 1914.   On December 17, 1915, the decree admitting to probate the will of Peter Caffrey was vacated upon the petition of certain next of kin who were not cited to attend the probate. In the meantime an action was brought by some of the next of kin of Peter Caffrey under section 2653a of the Code of Civil Procedure to set aside the probate.   These newly-discovered next of kin were not parties to that action.   The decree of the Surrogate's Court admitting the will to probate having been vacated, the newly-discovered parties filed objections to the probate and a decree was entered directing a trial of the issues raised by the objections before a jury in the Surrogate's Court.   The trial of the action in the Supreme Court was, in the meantime, stayed.

The issues framed for the jury were (a) whether the instrument presented for probate was the will of Peter Caffrey; (b) whether it was executed by him; (c) whether he was, at the time of such execution, under undue influence; and (d) whether he had, at the time, testamentary capacity.   At the conclusion of the trial the learned surrogate directed a verdict confirming the probate, and the present appeal is from such decree.

At the trial the question of undue influence seems to have been the main ground relied upon by the contestants, but upon the present appeal but two questions are raised — (1) whether the will were signed by the testator, and (2) whether the court erred in the exclusion of evidence.   The proponents produced three witnesses to the will, who testified as to its execution. The will was signed by the testator's making a mark, and the contestants produced an expert in handwriting, by whom they sought to prove that the mark was not made by the testator. The three attesting witnesses, one of whom was a lawyer, testified as to the due execution of the will.   The lawyer testified that the mark was made in this way — the testator "put his fingers on the pen and I moved it," while the other two witnesses testified that he made the mark without assistance. This variance in their testimony does not seriously impress me. The fact, according to the testimony of the three witnesses, is uncontradicted, viz., that the testator signed the will by making a mark.   The testator, at the time the will was made, was ninety-two years of age.   By reason of his advanced years and

the tremulous condition of his hand he was unable to sign his name, as shown by some of the exhibits put in evidence, in a legible manner. That fact had induced at least one of the savings banks where he had an account to refuse to pay, upon his order, funds standing to his credit — insisting, before it would do so, that he should make a mark and then have the same acknowledged.

All of the requirements of the statute as to the execution of a will were duly complied with. (See Decedent Estate Law [Consol. Laws, chap. 13; Laws of 1909, chap. 18], § 21.) The evidence shows that the testator had testamentary capacity, and the making of the will was not the result of undue influence practiced upon him. One cannot read the testimony of the three attesting witnesses without being irresistibly forced to this conclusion. A finding to the contrary would be so overwhelmingly against the evidence that the surrogate necessarily would have to set the same aside.

If this be true, then the only remaining question is whether the surrogate erred in rejecting the testimony of the expert by whom it was sought to prove that the mark by which the will was signed was not made by the testator. I think the surrogate properly refused to receive such testimony under *Matter of Hopkins* (172 N. Y. 360). The appellants contend that such testimony was admissible under that authority. I do not so read the opinion. There the court expressly held that certain marks were not writings within the meaning of chapter 36 of the Laws of 1880 and chapter 555 of the Laws of 1888, which permit the comparison of writing by experts. (Now Code Civ. Proc. § 961d, as added by Laws of 1909, chap. 65.) If the purpose of the testimony were to show that the mark could not have been made by the testator unaided, as testified by two of the witnesses, it would not have justified the court in submitting the case to the jury, because in that event the expert would have corroborated the testimony of one of the attesting witnesses. The expert admitted that he had only once before been called to testify as to the genuineness of a mark, and in that case he stated he was unable to testify, and in the present case he was "somewhat uncertain here as to what are

the standards which I am to use." The only possible thing to which he could have testified, so far as the mark was concerned, was as to whether it was made by a person unaided who made a mark conceded to have been made by the testator. But had he so testified it would not have justified a finding that the mark was not made by the testator, because one of the attesting witnesses, as we have already seen, testified that the testator put his hand on the pen while the witness moved it. The other two subscribing witnesses testified that he signed the will by making his mark, and whether assisted or unassisted, would not have justified refusing to admit the will to probate. If without assistance we have two witnesses as to the due execution of the will, and if assisted, one witness who would have been corroborated by the expert. In either view it follows that the surrogate was right in directing a verdict. While it may be said there was a scintilla of evidence to go to the jury, nevertheless, when all of the evidence is considered, even if the testimony of the expert had been admitted, the necessary conclusion is that if a verdict had been rendered adverse to the proponents, such verdict should have been set aside as against evidence and the will admitted to probate.

How little reliance could be placed on the testimony of the expert can be seen from his testimony as to when the red line under the name Peter Caffrey was made. He stated in his best judgment that the line was made after the name Peter Caffrey was written. A bare inspection of the paper demonstrates, I think clearly and conclusively, that it was made first.

It follows that the decree appealed from is right and should be affirmed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concurred.

Decree and order affirmed, with costs.