## Royal Collieries Company v. Wells.

(Decided May 3, 1932.)

FRED HOWES for appellant.

J. F. BAILEY and Z. WELLS for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Ed Wells was employed by the Royal Collieries Company as a coal loader. On September 17, 1914, he quit work, and in the following March filed a suit against the company alleging that he had been injured by bad air negligently permitted to accumulate in his working place. On the first trial of the case a verdict was rendered in favor of the defendant, but the circuit court granted a new trial. On the next trial the plaintiff recovered a verdict and judgment for $2,000, but upon an appeal to this court the judgment was reversed. Royal Collieries Co. v. Wells, 210 Ky. 600, 276 S. W. 515. The case was tried again, resulting in a verdict and judgment in favor of the plaintiff for $2,000. The present appeal is from that judgment.

It is insisted that the judgment should be reversed for the following reasons:

(1) Because there was no change in the issues or testimony, and this court's former opinion constitutes the law of the case. (2) The lower court erred in overruling appellant's motion for a directed verdict. (3)

The lower court erred in the admission of incompetent testimony. (4) The verdict is flagrantly against the evidence. (5) The verdict is excessive.

1. It is well settled that the opinion of this court upon an appeal constitutes the law of the case, thereafter, unless there is a substantial change in the issues or in the evidence. McClintock v. McClure, 171 Ky. 714, 188 S. W. 867, Ann. Cas. 1918E, 96; Louisville & N. R. Co. v. Stewart's Admx., 163 Ky. 823, 174 S. W. 744; Louisville & N. R. Co. v. Benke's Admr., 176 Ky. 259, 195 S. W. 417; Fletcher American Co. v. Culbertson, 228 Ky. 734, 16 S. W. (2d) 175; Commonwealth Life Ins. Co. v. Goodnight's Admr., 235 Ky. 699, 32 S. W (2d) 25. There was no change in the issues in this case, but it must be determined whether the evidence was substantially different, and not merely cumulative, on the material questions involved.

The evidence on the former appeal was authoritatively interpreted by the opinion then delivered. The opinion referred to the rule that in all industrial employments there are two classes of risks, commonly called the ordinary and the extraordinary risks, to which a servant is exposed. The ordinary risks are such as are inseparable from the service, inhere in the nature of the work, and are not caused or created by any negligence chargeable to the master. Such risks are assumed by the servant as an incident of the service. Extraordinary risks are those created by the master's negligence, and such dangers are not assumed by the servant, except in instances where the servant is aware of the menace and voluntarily exposes himself to it, or the danger is so obvious and palpable that an ordinarily prudent person would have observed, appreciated, and avoided it. There are some exceptions to both of these rules that were not noticed in the former opinion and need not be noted now. The rule in force at the time of the injury involved in this case was announced and applied in the case of Low v. Clear Creek Coal Co., 140 Ky. 754, 131 S. W. 1007, 33 L. R. A. (N. S.) 656, Ann. Cas. 1912B, 575, which was cited in the former opinion. A risk caused by the neglect of the master to perform a statutory duty is not assumed by the servant, but the servant is responsible for his own contributory negligence. To constitute contributory negligence, there must be some failure on the part of the laborer, in addition to the ordinary risk im-

posed by the character of his work under the conditions created by the master's conduct, which would amount to culpable negligence on the part of the servant. The rule as to contributory negligence was expounded in the case of Thayer v. Kitchen, 145 Ky. 554, 140 S. W. 1052, 1054, also cited in the former opinion, as follows:

"It is also insisted that, in continuing to work in the mine as he did, the servant was guilty of contributory negligence barring his right of recovery. But we think that was a question for the jury. A servant may know a thing as defective, and yet by reason of his youth, ignorance, or inexperience be incapable of comprehending the danger from it. By continuing at work the servant cannot be said to be negligent unless he not only knows the defects but knows the danger, or by ordinary care in the exercise of his employment should know it. Dow Wire Works v. Morgan, 96 S. W. 530, 29 Ky. Law Rep. 854; Meade v. Ashland Steel Co., 125 Ky. 114, 100 S. W. 821, 30 Ky. Law Rep. 1164; Cumberland Tel. Co. v. Graves, 104 S. W. 356, 31 Ky. Law Rep. 972; Keen v. Keystone Lumber Co. [Ky.], 118 S. W. 335; L. & N. R. R. Co. v. McMillen [Ky.], 119 S. W. 221; Louisville, H. & St. L. R. Co. v. Armstrong, 137 Ky. 146, 125 S. W. 276. There is a peculiar reason for applying this rule in the case of a subtle poison pervading the air, whose effect is only known to the medical profession, or those who have studied the subject. Kitchen may have been willing to undergo the discomforts of a headache or the temporary sickness that resulted when he left the mine, but it may be that he would not have been willing to take the risk of the noxious gases if he had known their effect on his constitution, and the danger of destroying his entire vitality if he continued to work in the mine. The rule to be applied to an ignorant servant should be more liberal in the case of a subtle agency like bad air than in the case of those physical things like the want of props or the cracking of a roof which he could plainly see and any man of prudence would understand the danger."

These authorities, recognized and referred to by this court in the former opinion, furnished the rules of law by which the evidence was to be measured. The

facts on the former trial were obscure, and the record was difficult to understand, as was expressly mentioned by the court. But, as the facts were construed by the court, they failed to prove any negligence or breach of statutory duty by the master, or that the injury arose from other than an ordinary risk of the employment which was assumed by the servant. Upon these assumptions the court ruled that a peremptory instruction should have been given. The conclusion was rested upon the ground that the plaintiff was an experienced miner who had deliberately exposed himself to a known danger. It is now insisted that no substantial difference is found in the evidence on the present appeal and that contained in the record on the former appeal. Much of it undoubtedly is the same as it was before, but there are material differences. It is now shown without contradiction that Wells was not, at the time of his injury, a miner with six years' experience. At the time of the trial which was under review on the former appeal more than five years had elapsed from the time of the injury, and the opinion assumed that his entire experience had been acquired before the injury. Hence he then stood in the attitude of an experienced miner, which was shown on the last trial to have been radically erroneous.

Wells had worked but a few days in the room where he was hurt, and his entire experience as a coal loader and miner before his injury covered but three months. And during that period he had not learned of the dangers lurking in poisonous gases in a mine. Certainly no one could fail to appreciate this material difference in the facts as affecting contributory negligence, or assumed risk. The maps in the present record, and which were not introduced on the former appeal, render the testimony intelligible, and show very clearly that the air currents were obstructed so as not to serve the room where Wells was working. The obscurities in the former record are now cleared up, and the difference in the two so substantial as to require a different conclusion as to the application of the law to the conduct of the plaintiff. The conditions in the working place of Wells were entirely different from the conditions in the other rooms which were supplied with air. The witnesses, Dawson, Sparks, and Fannin, who were working in the room of Wells preparatory to shooting coal before Wells went into it, suffered no ill effects from bad air, but Wells was

injured by noxious gases generated by the shots put off in the room after the cutters had finished their work.

The present record contains substantial evidence tending to show that there was bad air in the working place of the plaintiff. The conditions which were said to exist therein were described to experienced and expert miners, and they expressed the opinion that such conditions manifested the presence of bad air. Moreover, there was medical testimony in this record that was not in the former record. Dr. Wells testified on the first trial, but he frankly admitted then that he knew nothing of the effects of poisons from bad air or monoxide gas. But on the second trial he testified that he had made a study of those matters and had learned from experience and investigation the effects and consequences of poisoning from monoxide gas. The testimony of Dr. Wells on the last trial was substantially and materially different from that given on the other trial. Obviously, a physician may testify in 1927 to scientific knowledge which he did not have in 1916 or in 1920. A scientific man may be expected to learn much in that length of time. The testimony of John Marshall is new, as he did not testify on the previous trial. His experience covered fourteen years as a miner, including machine work, track laying and everything done about a coal mine. He explained the system by which air is sent through a mine and kept pure. His testimony tended to show that the conditions at the mine of the Royal Collieries Company as described to him would create bad air in the room where Wells was working because of its distance from the aid currents and the direction of their movement. Although Sparks was a witness on the former trial, he testified to some new facts on the last trial. James Blevins, defendant's mine foreman, stated on cross-examination that he could not be positive respecting the presence of bad aid in the room where Wells worked. He said that the air was pure in the mine at other places, but he was ignorant of the exact conditions in the room where Wells worked. He further stated that the symptoms which Wells exhibited were indicative of exposure to bad air. He denied that the place where Wells worked was 104 feet from the neck of the room where the air passed, but admitted that the air from that distance would not reach the room.

The testimony is contradictory as to the distance, but there was room for the jury to find that issue in favor of

the plaintiff. It is urged, however, that these material differences in the facts were merely cumulative evidence and not such a substantial change as to alter the law of the case, as announced on the former appeal. The law of a case is not changed merely because more evidence of the same facts is introduced. Fletcher American Co. v. Culbertson, 228 Ky. 734, 16 S. W. (2d) 175. But facts in issue which are not proven on one trial with sufficient definiteness to make out a case may be developed on another trial so as to produce a different legal result. Barton v. Com., 240 Ky. 786, 43 S. W. (2d) 55. Certainly the evidence of the contributory negligence of Wells was materially different on the last trial, not only as related to his experience and knowledge, but also as respected the conditions confronting him. A coal loader with only three months experience, without any previous contact with bad air, could not be held guilty of contributory negligence, as a matter of law, because that rule had been declared applicable to a miner with six years' experience who was accustomed to bad air.

In the former opinion, it was assumed that the plaintiff had been exposed to bad air all the time he had been working, covering a period of six years, and on that assumption it was deduced that a man of ordinary prudence should not have worked under those conditions. It is shown now that the plaintiff's experience was short, consisting of a few days in the dangerous place, and only a few weeks in the mine. He was wholly unaware and unwarned of the probable consequences of the exposure. We cannot say that every man of ordinary prudence necessarily would have discovered or realized the danger under such conditions. Hence we conclude that the evidence on the two trials was so different in material degree and probative effect as to require a different result. Cf. Southern Ry. in Kentucky v. Forsythe's Exrs., 118 Ky. 764, 82 S. W. 385, 26 Ky. Law Rep. 643. Appellant relies upon the case of Mahan Jellico Coal Co. v. Bird, 179 Ky. 767, 201 S. W. 306, where the plaintiff was hurt while jumping from a mine car. The space was narrow, and he struck the wall, causing him to fall so that his hand was run over by the car and two of his fingers were cut off. On a new trial, after a reversal by the court, he offered additional evidence as to some immaterial matters, such as the length of time he had been employed. But that was held to be immaterial, since the condition was fixed and permanent and observable at a

glance. ⸳ Such situation was manifestly different from the one presented here, where experience and knowledge were required to understand the effect of bad air, even after its presence was known. Like reasoning requires a rejection of the contention that the verdict is contrary to the evidence as to the violation of the duty of the master to provide good air. On the former trial the evidence was vague and indefinite, and it was held that the plaintiff's testimony was not corroborated, but contradicted on every hand. There is substantial evidence in this record that the plaintiff suffered a serious injury because of the bad air, and the obscurities noted before were cleared up on the last trial. The plaintiff on the last trial produced corroboration, and the contradictions of his own testimony were not so conclusive.

2. The disposition of the points first discussed renders it unnecessary to consider further the contention that defendant was entitled to a peremptory instruction. That argument assumed a favorable decision on the other points, and falls when those points are decided adversely.

3. Complaint is made of the admission of evidence. It is said the evidence respecting a certain break-through was inadmissible. The argument misconstrued certain language contained in the former opinion, where reference was made to a contention regarding a break-through as immaterial. On the last trial evidence was admitted to show that a break-through was closed so that no air could enter the room of Wells from that source. The evidence was properly admitted, since it tended to prove that the fresh air was prevented from entering the room and was carried away through other channels. If the break-through had been kept open, it might have afforded access for the air into the working place of Wells, and the fact that it was obstructed tended to show that the air could not reach the working place. The court did not say in the former opinion that such evidence was incompetent. It merely characterized an argument as immaterial on the main issue being considered.

4. The contention that the verdict was flagrantly against the evidence has been discussed in this opinion in dealing with the doctrine of the law of the case. ⸳On the former appeal it was said the verdict was flagrantly against the evidence in a certain particular, but, as we have already indicated, the evidence on the last trial was

sufficient to sustain the verdict on the points adverted to in the previous opinion.

5. The verdict was not excessive. There was testimony tending to show a serious and long-continued injury and general impairment of health. Two juries have fixed the same amount as compensation therefor. The last trial occurred thirteen years after the injury and about seven years after the former one. In such a situation we could not say that the verdict was excessive. Southern Ry. in Kentucky v. Forsythe's Exrs. 118 Ky. 764, 82 S. W. 385, 26 Ky. Law Rep. 643; Fremd v. Gividen, 233 Ky. 38, 24 S. W. (2d) 915; Fullenwider v. Brawner, 224 Ky. 274, 6 S. W. (2d) 264; Louisville & N. R. R. Co. v. Rowland's Admr., 227 Ky. 846, 14 S. W. (2d) 174; City of Providence v. Young, 227 Ky. 690, 13 S. W. (2d) 1022.

The failure of the opinion on the former appeal to discuss the question raised as to the amount of damages allowed was not tantamount to a holding that the verdict then under review was excessive. Matters not noticed in the opinion are tacitly approved. Lexington & E. R. Co. v. Sexton, 193 Ky. 201, 235 S. W. 773. Hence the former opinion cannot be construed as holding that the verdict was excessive, when the reversal then was not rested on that but upon other specific grounds.

The judgment is affirmed.

Whole court sitting.