## Carrithers et al. v. Jean's Ex'r et al.

(Decided June 9, 1933.)

696

HUBBARD & HUBBARD and EUGENE R. ATTKISSON for appellants.

WILLIAM A. EARL, GILBERT BURNETT and GORDON, LAURENT & OGDEN for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Reversing.

The paper purporting to be the will of Mary Eunice Jean was probated in the Jefferson county court. Her heirs appealed to the circuit court, and on the trial of the case there the jury found the paper to be her will. The contestants appeal.

Mrs. Jean had an estate then valued at about $100,000; her husband also had an estate of his own. They had no children. She was about seventy years old and he was some older. She had always managed her own estate. In July, 1930, she went to the Louisville Trust Company, where she had always transacted her business, and had an officer there to draw her will, which she executed, and her signature was witnessed by two other persons. The will was then put in a sealed envelope, and it was placed by the officer in a box where such papers were kept. Mrs. Jean's name was written across the end of the envelope. In November, 1929, the financial crash occurred and in December, 1930, the trust company was in trouble. Mrs. Jean went down to the trust company on January 6, 1931, and had the of-

ficer who had drawn the will to get it and give it to her. She had been going about and transacting all of her own business as usual until the night of November 9, 1931, when, after she had gone to bed, heart failure occurred and she died in a few hours. She was buried on the following Tuesday evening. The relatives looked about the house for a will, but found none. She and her husband were the only occupants of the house. On the following Tuesday a further search was made for the will, and then in the room back of the one she slept in it was found in the bottom bureau drawer. When they went in there to search for the will, the bureau drawers were found locked. The searchers then went to see her husband, who told them that she usually kept the key in the little drawer on the top of the bureau. He looked in there and got the key for them. They then unlocked the bureau drawers. On opening the bottom drawer they found it full of bedclothes. On the bottom of the drawer and under the bedclothes they found an envelope of the Louisville Trust· Company. The end of the envelope had been torn off and in it was the will. Her name and the name of the two subscribing witnesses had been erased by drawing lead pencil marks over them. Similar erasures had been made in the will where her name occurred and in the case of two devisees.

The contestants proved by Jos. P. Marmor, the trust officer of the Liberty Bank & Trust Company, that on December 8, 1930, she opened a deposit account with the bank, and as to a subsequent conversation with her on January 8, 1931, he says:

"I had asked her about her will; she told·me that she had had a will and that she had had it at the Louisville Trust Company, but on account of the Louisville Trust Company closing that she had taken the will away and destroyed it."

He then asked her about making another will, and she told him she had not made up her mind what she was going to do.

Mrs. Vernia Hays, a friend of Mrs. Jean, and a relative of Mr. Jean, says that in February, 1931, Mrs. Jean was talking to her about her business affairs and said she had no will and that she did not know how to

make a will. She also says that five or six times after this she said the same thing to her, and also said that it had been suggested to her that she leave her money to the church, but she was afraid to do that for fear that they would not use it as she wanted it used.

Mrs. Lillie Nicholson testified that about the last of April, 1931, Mrs. Jean said to her mother, when asked if she had made her will, "Mattie I have not, I don't know how." To the same effect is the testimony of Mrs. Nicholson's mother.

On the other hand, there was proof that Mrs. Jean would take a pencil and cross out entries that did not suit her in keeping her accounts. Three experts were introduced who upon an examination of the entries she had so made in her book, and a comparison of them with the will, testified that in their judgment she did not make the pencil marks now found on the will. One expert for the contestants gave contrary evidence.

On the proof the court in substance told the jury that they should find the paper to be her will unless they believed from the evidence that she had marked out by pencil her signature thereto or directed some other person so to do in her presence, with the intent to revoke her will, in which event they should find the paper not to be her will. The court overruled a motion for a peremptory instruction for the contestants, and over objection gave the propounders of the will the concluding argument before the jury.

Under the proof the will had been in the possession of Mrs. Jean from the time she took it from the trust company until her death, and it was found a week after her death in the bottom drawer of the bureau where she kept her things. The drawer was locked. The key of her bureau was found where she always kept the key, and there was no evidence that anybody had seen the paper or touched it after her death. The signature of Mrs. Jean to the will is carefully erased. So are the signatures of the attesting witnesses. The paper is conclusive evidence that the person who made these pencil marks upon the paper did so for the purpose of destroying the paper as a will. The only real question is whether these alterations on the paper were made by Mrs. Jean or another. The appellees introduced

proof showing declarations made by Leonard Tyler, who was a relative and present when the will was looked for, to the effect that he thought there was a will and to look among the bedclothes for it. It is earnestly argued for the appellees that Tyler made the changes on the paper, and the testimony of the three experts introduced by the appellees tended to show that a person with a vigorous, strong hand had made these changes and not a person with such a hand as Mrs. Jean had.

It is earnestly insisted that this was not a proper subject for expert testimony, and the testimony of the experts should be disregarded. But the rule is that, if there is any evidence, the question is for the jury. It was a proper subject for expert testimony under the facts. The weight of the evidence was for the jury. There was no substantial error in the admission of testimony. But the court erred in instructing the jury to find for the propounders unless they believed from the evidence that Mrs. Jean had made the marks upon the will. The paper which the propounders proposed to probate was a mutilated paper, and the burden was upon them to explain the mutilation. In 1 Underhill on Wills, sec. 230, the rule is thus stated:

"Where a will is produced with lead pencil cancellations, it will be presumed that they were done by the testator animo revocandi; and it is upon the party claiming that they were deliberate and not final to establish that fact."

To the same effect see notes, 62 A. L. R. pp. 1375, 1376.

In McIntyre v. McIntyre, 120 Ga. 67, 47 S. E. 501, 503, 102 Am. St. Rep. 71, 1 Ann. Cas. 606, the rule in such cases is thus stated:

"The presumption that revocation was intended will certainly arise where the testator draws lines through, and pastes slips of paper over, clauses of the will disposing of portions of his property, and also draws lines through his signature and those of the subscribing witnesses. It having been shown that the paper offered for probate in this case had been in the custody of the deceased up to the time of his death, the propounder was met with both of the assumptions above alluded to."

To the same effect see Wolf v. Bollinger, 62 Ill.

368; In re Cabler, 124 Okl. 275, 257 P. 757, and cases cited; In re Wellborn, 165 N. C. 636, 81 S. E. 1023.

Under the evidence, in view of the condition of the paper and that it was in the exclusive possession of Mrs. Jean, the propounders were met with the presumption that Mrs. Jean had made the changes in the will and had done so for the purposes of revoking it; the court should have instructed the jury to find the paper not to be her will unless they believed from the evidence that the erasures therein were made by another and not by her, and that, if they so believed, they should find the paper to be her will.

The burden of proof in the whole case was upon the propounders, and under the particular circumstances of this case it was also upon them to avoid the effect of the erasure of the name of testatrix to the will and those of the witnesses thereto, and to show that it was not done by her with the intention to revoke her will, but by another without her knowledge or consent. The trial of the case was not so practiced, nor did the instructions so submit it, and we think those errors, under the facts of this case, were prejudicial.

It is also contended that the verdict of the jury, necessarily finding that the will had not been revoked by the testatrix, was and is flagrantly against the evidence, but, in view of the fact that upon another trial the evidence upon that issue may be altogether different and much stronger than upon this one, we will reserve that question without determination.

Complaint is made that the court erred in not sustaining appellant's challenge for cause to a juror, but it does not appear that they exhausted their peremptory challenges and could not so have gotten this man off. Mr. Jean renounced the will.

Judgment reversed and cause remanded for a new trial.

The whole court sitting.