## Carrithers et al. v. Jean's Executor et al.

(Decided March 15, 1935.)

WILLIAM ALPHA HUBBARD, EUGENE HUBBARD and EU-GENE ATTKISSON for appellants.

WILLIAM A. EARL, GILBERT BURNETT and GORDON, LAURENT & OGDEN for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

This rather unusual contest respecting the matter of will or no will of Mary Eunice Jean, deceased, comes to this court for consideration upon a second appeal. See 249 Ky. 695, 61 S. W. (2d) 323.

On the first trial a jury found the questioned document to be the will of Mrs. Jean, and upon appeal a judgment entered in accordance with the verdict was

reversed on the ground that the case was so practiced in the trial court and an instruction so given by the court that the burden was placed on contestants, when it should have been borne by the propounders of the will. This conclusion was reached by this court on the showing made that the will had been in the possession of Mrs. Jean, and such fact raised the presumption that she had made the obliterating marks on the paper for the purpose of effecting its revocation.

On the second submission of the case ten of the jury found the mutilated paper to be Mrs. Jean's will. The facts presented to the jury on the second trial were the same as adduced upon the first hearing. The same witnesses testified, with perhaps a very few exceptions, and it is noted that there is no material difference in the substance of the testimony for both contestants and propounders, and under these facts twenty-two jurymen out of twenty-four have expressed the belief that the paper presented was the will of Mrs. Jean, in effect finding that she had not made the obliterating marks.

On this second appeal counsel for appellants advance several grounds upon which it is claimed this court should reverse the judgment of the lower court. We shall take them up in the order presented.

On the second trial, the contestants moved the court to limit the issue to the one question as to whether or not the obliterating marks found on the will were made by "the testator herself, or by some person without her knowledge and consent." This motion was overruled, though it appears from the record that by the court's instruction consideration was limited to this issue. Counsel in commenting upon the court's ruling, said:

"The court overruled this motion and held that pretty much of anything of a probative value on the question involved would be competent."

In passing it may be said that the motion is of somewhat an unusual nature. Issues are generally submitted to a jury upon proof which the court deems competent and relevant. We find no authority, and none is cited, which would compel any court to determine in advance of a trial what evidence or character

of evidence should be admitted during the trial. A court could hardly define or limit an issue before competent and relevant proof had been presented. If such was a physical or legal possibility, there would be a great saving of time and expense, but we have hardly reached such a stage in our jurisprudence.

Secondly, it is urged that the court erred in admitting a "family tree" by which it was claimed was shown those persons who would take by the laws of descent and distribution. It is argued that this chart showing the great number of such heirs at law, and their places of residence in widely separated territory, by its presentation, unduly influenced the jury because it was argued "with telling force" that Mrs. Jean would not have desired her property scattered among all these distantly located and perhaps unknown relatives.

While upon the trial of the case, under the provisions of section 25 of the Civil Code of Practice, a named few were permitted to sue for all, the parties named in the family tree were in reality parties to the suit. The relationship of each and every one of the heirs at law was established by witnesses, both on the first and second trials. The jury was entitled to know who were relations of Mrs. Jean, and the fact that many of them lived at great distances from her or had not visited her or in any way exhibited an interest in her well-being would be relevant for the purpose of showing that it would be unlikely on her part to so alter her will as to permit them to share. But this phase need not be discussed further, since it appears that the same testimony was before the court on the first trial, and the court has heretofore written the law on this argued point when it said: "There was no substantial error in the admission of testimony." Being competent evidence, we cannot say that such comments upon the evidence as are criticized rose to the dignity of reversible error.

The next contention urged for reversal is that the trial court erred in permitting handwriting experts to testify as to their opinions upon the question of whether or not Mrs. Jean made the obliterating marks on the will. These experts testified on both trials—three for the propounders and two for contestants. It is earnestly insisted that such evidence is incompetent, but in

presenting argument that it was incompetent it is only urged that it is carrying expert testimony too far when handwriting experts are permitted to testify as to defacing strokes or lines. Several cases from other jurisdictions are cited which seem to appear critical of testimony of handwriting experts testifying as to lines or marks. But they are not of sufficiently convincing strength to justify us in holding that the testimony of the experts in this case was not admissible on the ground of incompetency. Here the questioned document was introduced in the original and by means of photostat copies. The jury was permitted to examine them and compare them with other marks made by her. They could on this evidence alone have formed their conclusion as to whether Mrs. Jean did or did not make these mutilating marks. We can see no reason why the jury should not have the benefit of the opinion of persons experienced in dealing with the use of pen or pencil by another; so we are inclined to the opinion that there was no error in admitting the testimony of experts for what it was worth. In addition to this conclusion, it may be suggested that the question of admissibility of this testimony was settled by the former opinion in this case.

The next ground is based on the claim that the court gave an erroneous instruction to the jury. On the first trial the court below gave an instruction in such form and substance as to force the burden on the contestants. This court reversed on that ground, and advised the court below to give the instruction so as to place the burden on the propounders of Mrs. Jean's will. This the court did on the retrial.

This court in the former opinion directed the court to say by way of instruction to the jury that it should "find the paper not to be her will unless they believed from the evidence that the erasures therein were made by another and not by her, and that, if they so believed, they should find the paper to be her will." It is noted that the instruction given by the court below was in form and substance like the one specifically directed by the court, and, this being true, this court is bound by the conclusions reached in the former opinion. Up to this point, it is perfectly clear that this court is bound to conclude that the lower court followed the directions and rulings of the court, set out in the former

opinion. That opinion was the law of the case of the second trial. The rule of "the law of the case" prevails. This principle long ago established and long followed cannot now be changed. Pickrell v. Wilson, 217 Ky. 430, 289 S. W. 1100; Commonwealth Life Ins. Co. v. Goodnight's Adm'r, 235 Ky. 699, 32 S. W. (2d) 25, and cases therein cited. Moran's Ex'r v. Moran et al., 238 Ky. 403, 38 S. W. (2d) 207; Royal Collieries v. Wells, 244 Ky. 303, 50 S. W. (2d) 948.

The only complaint of appellant now made which was not determined by the court on the former opinion is the one urging that the verdict of the jury was flagrantly against the evidence, which objection seems to have its basis in the argument that the testimony of the experts was not admissible, or, to put it differently, not to be believed. We cannot agree that such a contention is tenable whether the basis is as we have stated it or not. There was tangible evidence before the jury by way of the questioned document accompanied by papers, seemingly admitted as having been made by Mrs. Jean. The jury inspected these. They might have reached their conclusion from these exhibits alone. Many other facts in the form of nonexpert testimony were testified to which would have a tendency to show whether Mrs. Jean would likely have made the marks on the will. There was testimony with regard to relationships; the finding of the will; her methods and practices; the condition in which the envelope containing the will was found; and other evidence tending to shed light on a vexatious question. It is sufficient for us to say that, after a careful consideration of the entire record and what has been ably argued, we are unwilling to disturb, and therefore affirm, the judgment of the lower court.

Judgment affirmed.