(No. 7092. June 26, 1943.)

JOSIE GREENSTREET, Appellant, v. A. L. GREEN-
STREET, Individually and as Executor of the Will and
Estate of Henry Greenstreet, Deceased, Respondent.

[139 Pac. (2d) 239.]

Cox, Ware & Stellmon for appellant.

Durham & Hyatt for respondent.

GIVENS, J.—Appellant, wife of respondent, brought suit to compel recognition by respondent, individually and as executor of his brother's will, of a contract which she contends was made between her and the deceased brother, as follows:

"April 12, 1937.

Agreement between Henry Greenstreet and myself

Josie Greenstreet

I Henry Greenstreet agree to Give Josie 12,000 twelve

thousand dollars. to take care of me, Henry Greenstreet till death. for nursing and care as long as I live. She is the only one that is caring for me. at present and If she continue to do so, she is to have at my death the 12000. which I firmly agree to do.

sign
his
Henry X Greenstreet
mark
A. L. Greenstreet

Josie Greenstreet"

Appellant alleged full compliance with the contract and submitted sufficient competent, probative evidence in support thereof. The cause was tried to a jury, and upon the issue of authenticity of the deceased brother's signature by mark and respondent's attestation the jury found on two special interrogatories:

"Did Henry Greenstreet execute the contract in question by personally placing his mark thereon as his signature? Answer. No.

"Was the mark of Henry Greenstreet witnessed by A. L. Greenstreet by said A. L. Greenstreet placing his signature near the same after Henry Greenstreet made his mark, if you find that he did so make it? Answer. No."

Judgment was responsively rendered in favor of respondent.

Appellant does not question the sufficiency of the evidence to sustain the verdict and judgment, and in substance makes but three assignments of error which present two decisive questions: first, whether or not a mark, in lieu of a signature, is properly the subject of expert testimony; and, second, whether the instruction as to the weight to be given expert testimony was correct.

The mark herein was not made by merely touching the tip of the pencil, but, if made by deceased, was, according to appellant's own testimony, executed by his holding the pencil in his own hand and making the crossed lines.

In support of her proposition that a mark in lieu of a signature is not properly the subject of expert testimony, appellant relies upon the following cases:

In re Astolas' Estate, 273 Mich. 189, 262 N.W. 766, 101 A.L.R. 760, wherein the court, after reviewing a number

of cases from different jurisdictions, which are not uniform in their treatment of the subject and are in conflict with each other, concluded that:

"The rule seems to be an expert witness may not testify to the signature of a witness by an ordinary mark or cross. Where the mark appears to have something in its construction to distinguish it from other ordinary marks, something by which it may be identified, something so uniformly used by the party that it may be identified as peculiar to her signature or her mark, where some established characteristic of the mark of the person is apparent, and the witness is familiar with the signature by mark of the person whose mark is in question, the witness may testify to his opinion based upon having seen the witness make her mark, upon comparison with the questioned document, upon the same basis that he may testify in relation to handwriting."

Such pronouncement, instead of being a categorical denial of the admissibility of expert opinion testimony, makes it dependent upon whether the mark seems to have something in its construction to distinguish it from other ordinary marks, etc., and also that a person who has seen the signatory make a mark may testify as to the one disputed, but that one may not so testify merely from a comparison with exemplars. The latter distinction, while formerly the reason why expert testimony based upon the comparison of handwriting generally was in some jurisdictions denied, recognizes that the one testifying who has seen the person make a mark is nevertheless in effect an expert, merely using a different basis for the opinion. The crux of the matter is the distinguishing peculiarities, and while the nonexpert witness testifying from having seen the person make the mark might not be able to give as explanatory testimony as an expert, he must have reasons for differentiation or his opinion would be a mere ipse dixit.

*Travers v. Snyder*, 38 Ill. App. 379, in holding comparison between a disputed mark and exemplars inadmissible, on the ground that it was obnoxious to the principle that a party cannot be permitted to manufacture evidence for himself, is contrary to sec. 16-412, I.C.A., which authorizes the use of exemplars, and does not support appellant's position.

Matter of Reynolds, 4 Dem. (14 N.Y.) 68, merely shows that the surrogate substituted his opinion for that of an expert, stating: "But a cross mark has no such case or

form as to distinguish it from a like mark made by any other individual. It cannot be the subject of expert testimony." The opinion begs the question by assuming that which is the very subject of the controversy, namely, whether there are individual, recurrent, or absent characteristics or distinguishing features.

In re Corcoran's Will, 129 N.Y.S. 165, and In re Romaniw's Will, 163 Misc. 481, 296 N.Y.S. 925, merely follow In re Hopkins' Will, 172 N.Y. 360, 65 N.E. 173, 65 L.R.A. 95, elsewhere distinguished herein.

The statement in *Wolf v. Gall,* 176 Cal. 787, 169 P. 1017,

"A writing expert was being interrogated in the apparent effort to bring forth from his examination of the cross made by Mrs. Funkenstein in attestation of the genuineness of her signature that the mark was made by somebody else, or that somebody else directed the pen. We do not perceive, nor are we told, how an expert in handwriting could bear evidence upon the matter, and can quite understand the court's remark in ruling upon it:

" 'Whether or no somebody else held the pen, I draw the line there; I can't stand for it.' ",

is not in point herein because there the person whose mark was made apparently merely touched the tip of the pen or pencil. Herein, the testimony was to the effect that the deceased himself held the pencil in his hand and made the mark.

*Mickel v. Althouse,* 38 Cal. App. 321, 176 P. 51, merely quotes with approval the statement of the trial court quoted in *Wolf v. Gall,* supra, and is of no value.

The text of 20 Am. Jur. 708, sec. 844, is as follows:

"The trend of authority is to the effect that an expert witness may not give an opinion as to the genuineness of a signature made by an ordinary mark or cross. Some courts, however, admit the opinion of expert witnesses in this respect and leave the weight thereof to the jury."

As supporting the proposition that expert testimony is inadmissible, In re Astolas' Estate, supra, and In re Hopkins' Will, supra, are cited. In re Hopkins' Will did not involve a mark as a signature, but marks or lines drawn through a signature, and the question was whether these marks were or were not made by the person who wrote the

signature. The court arrived at its exclusionary conclusion thus:

"The general rule which admits of the proof of the handwriting of a party by experts who have compared the writing with other writings of the person is founded on the reason that in every person's writings there is a peculiar prevailing characteristic which distinguishes it from the handwritings of every other person, and therefore an expert, by studying characteristics as they appear in the writings of the person, may be able to determine with some degree of certainty as to whether a writing sought to be proved contains any of the characteristics of that of which he has examined and studied. But mere perpendicular marks or scratches, used either perpendicularly or horizontally over a signature for the purpose of canceling it, *do not contain the characteristics necessary in the formation of letters to enable an expert or any person to speak with any degree of certainty with reference to the identity of the person who made the marks.*" [Emphasis mine.]

By an inspection and comparison of marks the court thus set itself up as an expert and thus generalized. Whether the particular marks examined by the court and made the criterion for its statement did not contain distinctive characteristics would be apparent only from an examination thereof. One might as well say that the pathologist is unable to distinguish between various kinds of microbes, bacteria, and bacilli, because first they have to be greatly magnified through the microscope before the distinguishing characteristics can be noted and classified. As stated in the Hopkins case:

"In the early period of the English law, expert testimony was unknown; but, as the world advanced in education, the courts commenced to avail themselves of the knowledge of others pertaining to scientific matters which was not possessed by ordinary individuals."

In the field of ballistics expert testimony is universally admitted that very slight defects in the lands or grooves of a gun impart corresponding indentations or corrugations upon bullets, and testimony that a bullet was fired from a certain gun, based upon such characteristics, is universally accepted.

The note in L.R.A. 1918D, 644 contains annotations subsequent to the note in 65 L.R.A. 95, citing *Wolf v. Gall,* supra, and In re Caffrey's Will, 174 App. Div. 398, 161

N.Y.S. 277. In the latter case the evidence showed that the signatory merely put his finger on the end of the pen and did not himself hold it. *Wolf v. Gall* is elsewhere distinguished herein.

The one common thought to be gleaned from the cases cited by appellant in support of her proposition is 'that marks as lieu signatures are too small to contain sufficient distinctive characteristics to justify from comparison expert opinion testimony as to authenticity or genuineness. This conclusion really goes only to the weight, not to the admissibility, of the expert's opinion. The question of whether the mark in question or the exemplars have distinguishing characteristics or features either as to the substance thereof or the manner in which made while perhaps as apparent to the trier of fact, when pointed out, as to the expert, nevertheless, justifies an expert's opinion for the reason that one trained and skilled in the examination of questioned documents, whether magnified or not, will more readily detect and be able to point out in their original form perhaps very slight and inconspicuous characteristics not apparent to the uninitiated but which when called to the attention of the trier of fact loom large.

Respondent cites in support of admissibility the following: *Ausmus v. People*, 47 Colo. 167, 107 P. 205, which squarely supports the rule on this reasoning:

"We are clearly of the opinion that upon reason and authority the XX's [disputed marks] and //'s [exemplars] under consideration were proper subjects for expert testimony, and that the witness qualified within the requirements of the law. An expert is one who has superior knowledge of a subject, and is therefore able to afford the tribunal having the matter under consideration a special assistance, and his knowledge may have been acquired by professional, scientific, or technical training or by practical experience in some field of human activity conferring on him an especial knowledge not shared by men in general. (*Bradford v. People*, 22 Colo. 157, 43 P. 1013; 17 Cyc. p. 36.) It was shown that witness had a large experience in examining handwritings and signatures and signature marks in the course of his business in one of the largest banks in the city of Denver; that he had read and studied all books accessible on handwriting and expert testimony pertaining thereto; that his position in the bank for a number of years had been such as to make him a skilled observer in such

lines. Besides, it was admitted that he was qualified as an expert on handwriting. Therefore he certainly was qualified as an expert on XX's and //'s forming a signature, for the latter is embodied in the former, and constitutes a part thereof. Sec. 4185, par. 11, Mills' Ann. St., expressly declares: 'That in all cases when the written signature of any person is required by law, it shall always mean the proper handwriting of such person, or in case he is unable to write his proper mark.' Under this statute and sec. 1746c, Mills' Ann. St. Rev. Supp., it appears that signature marks are clearly the subject of expert testimony. But irrespective of the statute, a signing by mark is a 'written signature,' and, as will hereinafter appear, is the subject of expert testimony. Lawson on Expert and Opinion Evidence, p. 296, states the rule as follows: 'Handwriting * * * includes a mark made by a person unable to write, and all writing done by a person able to write, whether his usual hand or signature or not.' And among the illustrations given in support of the proposition is the following: 'A. M. is sued on a bill of exchange, which she had indorsed with her mark; the writing "A. M., her mark," being in the plaintiff's handwriting. W. testifies that he has frequently seen A. M. make her mark, points out some pecularity in it, and expresses the opinion that the mark on the bill is hers. His opinion is admissible.' The author supports his illustration by the citation of authority."

The court then distinguishes the Hopkins case and several other authorities urged in opposition to the admissibility of expert opinions. The reasoning of the court is too lengthy to be quoted herein but cogently and succinctly supports the admissibility of such testimony.

*Carrithers v. Jean's Ex'r*, 249 Ky. 695, 61 S.W. (2d) 323, affirmed 259 Ky. 20, 81 S.W. (2d) 857, cited by respondent, is similar to but contrary to In re Hopkins' Will, considering cancellation marks.

In Succession of Butterworth, 195 La. 115, 196 So. 39, the question was who drew certain lines through certain portions of a purported will. The court held:

"It is argued on his behalf that this class of evidence being so conjectural and unreliable has no probative force. Nevertheless, the testimony of an expert can not be arbitrarily rejected. Like the testimony of other witnesses, it should be considered by the court and accorded the weight

to which it is entitled in view of the facts and the common knowledge of mankind. (Succession of McDonogh, 18 La. Ann. 419, 444; Succession of Stewart, 51 La. Ann. 1553, 26 So. 460; Succession of Lefort, 139 La. 51, 71 So. 215, Ann. Cas. 1917E, 769.) In the Succession of Stewart, this court expressly held that one of the methods of proving handwriting in cases of disputed wills was by comparison of the handwriting and by experts. This ruling was approved in the Succession of Lefort. If it be said that the ruling loses its force when it is sought to be applied to the case of erasures effected by drawing lines through dispositions in a will, certainly it can not be gainsaid that expert testimony in the case of erasures may be considered in corroboration of positive testimony and surrounding circumstances tending to establish the authenticity of the erasures."

Succession of Lefort, 139 La. 51, 71 So. 215, involved more characters than a mark.

*Goo Kim Fook v. Hee Fat,* 27 Haw. 491, held expert evidence by Chinese teachers admissible as to the genuineness of disputed written Chinese characters.

*State v. Tice,* 30 Ore. 457, 48 P. 367, held the opinion of an expert as to a mark inadmissible because of an improper exemplar, not that a mark as such was not the subject of expert testimony.

The examination of the expert in the instant case is extensive and coordinated and plausibly sets forth the expert's analysis of the claimed characteristics of concededly authentic signatures of the deceased brother as exemplars, compared with the disputed mark. Herein the enlarged photographs clearly show somewhat distinctive features in the exemplars, as much as perhaps would appear in one letter of the alphabet, and, while only along the lines and at the ends of the lines constituting the mark, they are apparent in the enlargements. There were at least, though attenuated, some distinguishable differences consisting of endings, hooks and tremors, tapers and method of stroke in making the lines whereby the marks were somewhat distinguishable from each other. Herein such differences were sufficient to reasonably enable one to say that an expert could base thereon his ultimate conclusion that they were or were not made by the same person, comparable to the testimony of an expert physician as to whether certain internal body conditions are disclosed by the X-ray.

The opinion of a handwriting expert is obviously no better than his reasons therefor. The bases for his reasons are, of course, the questioned document and exemplars, which are as open to inspection by the trier of fact as the expert. There is thus a check upon his opinion or conclusions which is not available as to many other expert witnesses, which is an added reason why such testimony should be admissible under a liberal interpretation of the rules of evidence and on the theory that the trier of fact is entitled to all information possible.

 Appellant's second assignment of error challenges the correctness of this instruction:

"Gentlemen of the jury, the opinion of experts is proper and competent evidence for you to consider, along with all the other evidence, facts and circumstances.

"The weight to be given to the opinion of an expert is a question for the jury to determine, and you must determine what weight or credit you will give to any expert opinion the same as you are to determine what weight you should give to the testimony of any other witness in the case."

In the absence of a request for an additional or elaborated instruction with regard to the weight to be given experts' testimony this instruction was not incorrect. (*Stroscheim v. Shay*, 63 Ida. 360, 120 P. (2d) 267; *Baird v. Shaffer*, 101 Kan. 585, 168 P. 836; *Burns v. Clark*, 105 Kan. 454, 185 P. 27; *Grosfield v. First Nat. Bank of Miles City*, 73 Mont. 219, 236 P. 250; In re Zimmerli's Estate, 162 Wash. 243, 298 P. 326; *Sheldon v. Wright*, 80 Vt. 298, 67 A. 807; *Moore v. Chicago, R. I. & P. Ry. Co.*, 151 Iowa 353, 131 N.W. 30; *Rangely v. Harris*, 165 N.C. 358, 81 S.E. 346; *Longan v. Weltmer*, 180 Mo. 322, 79 S.W. 655, 64 L.R.A. 969.)

 Appellant assigns as error the withdrawal, after its admission, of the disputed document from the courtroom by Stanley McDonald, respondent's handwriting expert, without permission of the trial court; however, she cites no authority in support of such proposition and does not indicate in the slightest how this action on the part of the expert was in any way prejudicial or injured her cause of action except that thereby the expert was able to give the exhibit more intensive study. Such assignment is therefore without merit. (*Patrick v. Smith Baking Co.*, 64 Ida. 190, 129 P. (2d) 651, syl. 4.)

While reference in this assignment is made to claimed bias of the trial court, no assignment as such raises such bias or calls to our attention any objection or exception made at the time of the trial in respect thereto and therefore is not sufficient to cause further comment thereon or consideration thereof. (In re Brown's Estate, 52 Ida. 286, at 299, syl. 14, 15 P. (2d) 604; *Giraney v. Oregon Short Line R. R. Co.,* 54 Ida. 535, at 546, syl. 7, 33 P. (2d) 359.)

The judgment is affirmed. Costs to respondent.

Holden, C.J., Budge and Dunlap, JJ., and Reed, D.J., concur.

Reed, D.J., sat in place of Ailshie, J., who deemed himself disqualified.